[No. D050080. Fourth Dist., Div. One. Feb. 1, 2008.]

SARAH B., Plaintiff and Respondent, v.
FLOYD B., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

[1] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III.A., C., D. and E.

COUNSEL

Floyd Brown, in pro. per.; and Bonnie M. Simonek for Defendant and Appellant.

Basie & Fritz and Erika Collins for Plaintiff and Respondent.

OPINION

AARON, J.—

I.

INTRODUCTION

Appellant Floyd B. appeals from a final order regarding custody of his daughter N.B.[2] Sarah B. and Floyd B. were dating when Sarah became pregnant with N.B. Floyd and Sarah lived together, but never married. When N.B. was approximately one and a half years old, Sarah decided to leave Floyd and move to Colorado with N.B. A month after Sarah and N.B. arrived in Colorado, Sarah filed a petition in the trial court to establish that Floyd was N.B.'s father, and requested that the court determine custody and visitation, and appropriate child support.

After reviewing the report of the court-appointed evaluator and hearing testimony from the parties, the trial court concluded that because N.B. had a more mature and stable relationship with her mother, it would be in N.B.'s best interest to grant Sarah primary physical custody, even though Sarah resided in Colorado.

---

[2] Although the record on appeal contains no formal judgment and there appears to be no formal order by the court, we exercise our discretion to treat the court's written and signed memorandum of findings after the October 12, 2006 hearing as an appealable final order. "[I]t is well settled that the substance or effect of the judgment and not its designation is determinative of its finality. A memorandum of decision may be treated as an appealable order or judgment when it is signed and filed, and when it constitutes the trial judge's determination on the merits. [Citations.]" (*Estate of Lock* (1981) 122 Cal.App.3d 892, 896 [176 Cal.Rptr. 358].) Here, the court identified a specific shared parenting plan and calculated an award of child support, there is no indication that an additional order or judgment was ever filed, and neither party has raised the issue of the appealability of the court's determination. We therefore conclude that the trial court's memorandum of findings constitutes the court's final determination of this matter on the merits and should be treated as a final appealable order.

On appeal, Floyd raises a variety of legal and factual challenges to the trial court's actions in this case. Floyd asserts that the trial court erred when it did not find Sarah in violation of the standard temporary restraining order (TRO) issued in conjunction with Sarah's petition to establish a parental relationship on the ground that she moved with N.B. to Colorado. Floyd also contends that it was error for the court to adopt the reports of the family court mediator and the child custody evaluator. Floyd further asserts that the trial court failed to apply the appropriate standard for a move-away case. In addition, Floyd raises a number of other contentions, in which he essentially reargues the facts of this case and claims that it was inappropriate for Sarah to move to Colorado, and that he cannot have a meaningful relationship with N.B. if Sarah is permitted to retain primary physical custody of N.B. in Colorado.

Floyd also raises arguments in his reply brief that he did not raise in his opening brief. Floyd contends in his reply brief that the trial court made a number of procedural errors that deprived him of a fair hearing. Specifically, Floyd asserts that the trial court never required Sarah to request a move-away order; that the court prevented Floyd from presenting his entire case by insisting on concluding the hearing before 4:00 p.m. on the day of the hearing; and that the court failed to define the purpose and scope of the evaluation the court ordered pursuant to Evidence Code section 703.

■ We conclude that none of the arguments Floyd raises presents a sufficient ground for reversing the trial court's order. Although Floyd takes issue with the evidence presented and the trial court's interpretation of that evidence, he has not shown that the trial court committed legal error or that the court abused its discretion in setting out a custody plan for N.B. We therefore affirm the trial court's custody order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual background*

Sarah and Floyd dated briefly in 1994. Although the two lost touch, they became reacquainted and began dating again in August 2003. At the time, Sarah was in the Air Force and was living in San Antonio, Texas. Floyd was

living in San Diego. In October 2003, the couple learned that Sarah was pregnant. They decided that Sarah would leave the Air Force and move to San Diego, and that they would work on their relationship. N.B. was born in July 2004.

In December 2004, Sarah accepted employment with the Air Force Reserves. The following month, Sarah and N.B. moved to Los Angeles for a six-month active duty tour. In May 2005, Sarah received an offer to take a six-month active duty tour in Colorado Springs. She agreed to take the job after Floyd indicated that would be fine with him. However, the job fell through and Sarah returned to San Diego in June 2005. Sarah started a new job on July 5, 2005. She received benefits and health insurance for N.B. through her employer.

Arguments between Sarah and Floyd began to escalate during this time. Floyd refused to continue to attend counseling sessions with Sarah. In November 2005, Sarah and Floyd decided that they would work on their relationship for three more months, but that if the relationship did not improve, they would part ways.

In February 2006, Sarah decided to leave Floyd. While Floyd was out of town, Sarah drove with N.B. to Sarah's sister's home in Colorado. Although Sarah and Floyd had been planning to separate, the parties dispute whether Sarah told Floyd that she intended to move out of the state.

B.  *Procedural background*

Sarah filed a "Petition to Establish Parental Relationship" in the San Diego County Superior Court on March 7, 2006. The parties participated in a mediation conference on March 27, but were unable to reach an agreement as to a custody-sharing plan. The mediator recommended in her report that N.B. reside primarily with Sarah. The court entered a judgment of paternity establishing Floyd as N.B.'s father on May 8, 2006.[3] The trial court also entered temporary custody orders in which the court allowed N.B. to remain in Colorado with Sarah, and granted Floyd visitation.

The trial court delayed making an initial custody determination pending the completion of an evaluation report by Neil. G. Ribner, Ph.D. On October 26,

---

[3] Because the appellant's appendix filed as the record in this case does not contain a number of documents that were filed in the trial court, we rely in part on the trial court's description of the procedural history of the case.

2006, after receiving Dr. Ribner's report and hearing testimony from Sarah, Floyd, and a friend of Floyd's, the court issued its findings with regard to an initial custody determination. The trial court granted Floyd and Sarah shared legal custody of N.B., and granted Sarah primary physical custody. The court also adopted a detailed visitation schedule. The schedule provides, among other things, that Floyd be permitted visitation with N.B. the first weekend of each month in San Diego, and the third weekend of each month in Colorado. The schedule also details how holidays, birthdays and vacations with N.B. are to be divided between Sarah and Floyd. Both parents are required to attend counseling, enroll in a parenting class, and refrain from making disparaging comments about each other in N.B.'s presence.

Floyd appealed from the trial court's order on December 22, 2006.

III.

DISCUSSION

A. *Standard of review*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *The TRO does not provide a basis for reversing the trial court's order*

Floyd argues that by removing N.B. from California, Sarah violated the standard TRO that is issued upon the filing of a petition to establish a parental relationship. The TRO prohibits any party from removing the child from the state without the consent of the other party or a court order. Floyd contends that early in the process, when the court heard Sarah's OSC and issued a temporary custody order, the trial court should have required that Sarah return N.B. to California rather than allowing her to remain in Colorado with N.B.

Sarah filed the petition to establish Floyd as N.B.'s father pursuant to the Uniform Parentage Act, Family Code[4] section 7600 et seq. Section 7700 provides that when a petition is filed under this section, "In addition to the contents required by Section 412.20 of the Code of Civil Procedure, in a proceeding under this part the summons shall contain a temporary restraining

---

[*]See footnote, *ante*, page 938.

[4] Further statutory references are to the Family Code unless otherwise indicated.

order restraining all parties, without prior written consent of the other party or an order of the court, from removing from the state any minor child for whom the proceeding seeks to establish a parent and child relationship." Floyd contends that the court's failure to order that N.B. be returned to California pursuant to the restraining order constitutes error. We disagree.

■ As the trial court pointed out, the statute does not state that a child who is already residing in another state at the time the petition is filed must be returned to California. Rather, the provision states only that a parent may not remove the child from the state, absent written permission from the other party or an order of the court, once the petition has been filed. N.B. was not in California at the time the petition was filed, and there is no indication that Sarah unlawfully removed N.B. from California. There was no court order in effect in February 2006 when Sarah moved with N.B. to Colorado, since neither party had petitioned the court for an order determining custody at that time.

Floyd admits that there was no court order in place before Sarah moved to Colorado. He states in his opening brief, "Prior to February 10, 2006, there were no custody orders in place. In fact, neither [Floyd] nor [Sarah] had ever been before this court on any issue and [as] such, the custody was truly joint custody . . . ." There was thus no legal impediment to Sarah changing N.B.'s residence.[5]

■ Floyd has cited no authority that suggests that a parent who is residing in another state with a child at the time he or she seeks the assistance of a California family court must return the child to California. In fact, the Legislature has acknowledged that there may be times when California courts determine custody issues that involve children who are not residing in the state. Specifically, under the Uniform Child Custody Jurisdiction and Enforcement Act, section 3400 et seq. (UCCJEA), California courts may make custody determinations in certain circumstances, even though the child at issue may not reside in California.[6] "[A] court of this state has jurisdiction

---

[5] In the absence of a court order or decree affecting custody, both a mother and a father have an equal right to custody of an unmarried minor child. (§§ 3010, 7500.) "Although [the Penal Code] makes it a crime maliciously to take, entice away, detain, or conceal a child from the person having lawful charge of the child, the California Supreme Court has made clear that in the absence of an order or decree affecting custody, a parent does not commit child stealing by taking exclusive possession of the child. [Citation.]" (*Cline v. Superior Court* (1982) 135 Cal.App.3d 943, 947 [185 Cal.Rptr. 787].)

[6] A number of states, including California, have adopted the UCCJEA, which sets forth the circumstances under which a state may exercise its authority to make custody determinations.

to make an initial child custody determination" if California "is the home state of the child on the date of the commencement of the proceeding, *or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.*" (§ 3421, subd. (a)(1), italics added.)[7] There is no reason to believe that the Legislature intended that children living elsewhere be returned to California anytime a custody proceeding has been initiated in California.

Floyd points out that Sarah stated in her petition that N.B. could be found within California, and that this constitutes proof that Sarah unlawfully removed N.B. from the state *after* she filed the petition. On the first page of the petition, under the statement, "4. The action is brought in this county because (you must check one or more to file in this county)," Sarah marked with an "x" the statement, "the child resides or is found in the county." However, Sarah's attorney explained at a hearing that the attorney marked the box indicating that N.B. could be found in the county, and that she did so because there was no other appropriate option on the form.[8]

The supporting declaration filed with the petition clearly states that N.B.'s residence at the time the petition was filed was in Colorado, not California, thereby indicating that N.B. was not to be found in California. This constitutes sufficient evidence to support the trial court's conclusion that N.B. was residing outside of California at the time the petition was filed. There is also

---

[7] "Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." (§ 3402, subd. (g).) A "child custody determination" is a "judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order." (*Id.*, subd. (c).) A proceeding to establish paternity is considered a "child custody proceeding" for purposes of application of the UCCJEA. (§ 3402, subd. (d).)

[8] This question on the judicial form for petitions to establish a parental relationship appears to relate to the issue of an appropriate venue for the action. As we have already discussed, the court clearly has jurisdiction to make a custody determination in certain circumstances, even if the child is not in the state. However, section 7620 provides for personal jurisdiction and venue in actions to establish a parental relationship. California courts have personal jurisdiction over "[a] person who has sexual intercourse or causes conception with the intent to become a legal parent by assisted reproduction . . . ." (*Ibid.*) Additionally, "[a]n action under this part shall be brought in one of the following: [¶] (1) The county in which the child resides or is found. [¶] (2) The county in which a licensed California adoption agency maintains an office if that agency brings the action. [¶] (3) If the father is deceased, the county in which proceedings for probate of the estate of the father of the child have been or could be commenced." (§ 7620, subd. (b); see *id.*, subd. (a).) Thus, the venue provision does not appear to contemplate a situation like the one here, in which a parent moves to another state with the child prior to filing the petition. However, Floyd did not raise a challenge to the proceedings based on venue.

sufficient evidence to support the court's conclusion that despite N.B.'s status as a new resident of Colorado, California could still be considered her home state for purposes of determining custody.[9] Because the court determined that Sarah and N.B. were residing in Colorado at the time Sarah filed her petition, any court orders in this case were made after N.B. was already living in Colorado.

■ Even if one were to interpret the provisions of section 7700 as creating a presumption that a parent must return a nonresident child to California upon filing a petition to establish a parental relationship, and that the failure to do so would constitute a violation of the automatic TRO, the trial court's first concern is the child's best interest. If the trial court has the power to permit a party to remove a child from the state after a petition has been filed, as section 7700 clearly authorizes, the court must have the authority to determine, as the court did here, that a child who has previously been removed from the state need not be returned to California if doing so would not be in that child's best interest. The trial court clearly believed that in the circumstances of this case, an order permitting N.B. to remain in Colorado was warranted. The court did not abuse its discretion in making this determination.

Although Floyd expresses frustration with the manner in which Sarah has handled this matter, he has provided no grounds for this court to conclude that the trial court erred in allowing Sarah to maintain N.B.'s residence in Colorado while the petition was pending.

C.–E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[9] At the hearing on Sarah's OSC, the court and the attorneys discussed the fact that Sarah had been unable to file a petition to establish Floyd's paternity in Colorado because Colorado courts would not exercise jurisdiction over a custody determination as to N.B. since she had not been a resident of Colorado for a long enough period of time under the UCCJEA. Sarah therefore filed her petition in a California court. This was reasonable, given the fact that California courts have personal jurisdiction over Floyd, and N.B. had significant ties to California and had been living there within the six months before Sarah commenced these proceedings.

*See footnote, *ante*, page 938.

## IV.

## DISPOSITION

The order of the trial court is affirmed.

Benke, Acting P. J., and Haller, J., concurred.