Filed 10/18/23  D.P. v. M.J. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| D.P.,<br><br>    Respondent,<br><br>    v.<br><br>M.J.,<br><br>    Appellant. | B320624<br><br>(Los Angeles County<br>Super. Ct. No. 17STPT01146) |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth Potter Scully, Judge.  Affirmed.

M.J., in pro. per., for Appellant.

No appearance for Respondent.

_____

Appellant M.J. (mother) and respondent D.P. (father) have a child, A.P., born in February 2017. In April 2018, mother obtained a domestic violence restraining order against father that expired in October 2019. Mother claims[1] the family court issued the restraining order because father had physically attacked her on one occasion in December 2015 and on another in April 2016.

In March 2022, the family court issued an order granting the parents joint legal custody and awarding father "a significant amount of parenting time" according to a schedule that was also part of the court's order. The court found that father had rebutted the Family Code[2] section 3044 presumption that an award of joint legal custody to a person who has perpetrated domestic violence would be detrimental to that child's best interest. In support of this finding, the court applied certain statutory analytic factors, including: Father had not committed further acts of domestic violence and had successfully completed a parenting class and more individual counseling than was ordered, and the restraining order was no longer in place.

Mother, who is self-represented, appeals the family court's custody and visitation order. Her principal contention is that the family court committed legal error in finding that father had successfully rebutted the section 3044 presumption because the court erroneously believed only acts of physical violence can constitute domestic violence under section 3044. She contends the family court erred in ignoring that father's frivolous ex parte

---

[1] Mother's appellate brief is somewhat opaque as to the procedural history of this case including the basis for the prior restraining order.

[2] Undesignated statutory citations are to the Family Code.

filings disturbed her peace, which constitutes domestic violence under section 3044. Mother also challenges the evidentiary sufficiency of the court's finding that father did not commit further acts of domestic violence for the purpose of section 3044.

The record does not support mother's argument that the family court believed that only physical violence can be domestic violence under section 3044. Rather, the record demonstrates that, in determining that father had successfully rebutted the section 3044 presumption, the family court evaluated the merits of mother's claim of further domestic violence based on father's ex parte filings disturbing her peace. Further, mother fails to discharge her burden of affirmatively demonstrating that the family court's ruling is not supported by substantial evidence. We also reject mother's challenges to the parenting time provisions of the family court's order. Lastly, to the extent mother attempts to level any other appellate claims, she fails to do so cogently. We thus affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

We summarize only those facts pertinent to our disposition of this appeal.

On September 29, 2017, father commenced the instant parentage action concerning A.P., who had been born in February of that year.

Although we discern mother is asserting in her appellate brief that on October 27, 2017, the family court temporarily

---

[3] Our Factual and Procedural Background is largely taken from the family court's ruling. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling].)

awarded her sole legal and physical custody of A.P., the record citation she provides does not substantiate that claim.

On April 6, 2018, the family court issued a domestic violence restraining order that protected mother from father and expired on October 6, 2019; A.P. is not listed as a protected party on the restraining order.[4]  The April 6, 2018 restraining order and the evidence mother introduced to secure that order are not in the record before us.[5]  Although mother's briefing on this point is not entirely clear, mother apparently claims the family court issued the restraining order based on her allegations that father had physically attacked her on December 10, 2015 and April 5, 2016.  Mother also appears to claim that she and father had resided together at the time of these alleged altercations, and that mother moved out of father's residence at some point after A.P.'s birth.

On January 24, 2020, the family court denied mother's request to renew the restraining order.  In its ruling, the court observed, "significant changes . . . ha[d] taken place since the original order was issued," to wit, father had "completed three parenting classes, including one co-parenting class," and "[t]he parties ha[d] both utilized the services of a therapist with the goal of reducing conflict."  The court also remarked, "It appears to the Court that, while there is still a great deal of conflict between

---

[4]  Although the March 16, 2022 ruling that is the subject of this appeal states the restraining order expired on "October 6, 20*20*" (italics added), this is a typographical error.

[5]  We further note that many filings referenced in mother's appellate brief are also absent from our record, notably father's purported frivolous ex parte filings.

the parties and more work to do, there has been some positive movement between the parties."

On August 25, 2020, the family court denied father's request to modify its custody and visitation orders, but nonetheless "increased Father's parenting time." In rendering this decision, the court stated: " 'While the Court applauds [father's] efforts to date, at this time the Court does not find the [section 3044] presumption has been rebutted. . . . It is clear to the Court that [ ]Father has made efforts to make himself a better father. These efforts, combined with the passage of time and the increased maturity of the minor child, suggest to the Court that it is in the minor's best interests to have longer blocks of time with her father.' "

On January 28, 2022, the family court tried issues of child custody and visitation, and took the matter under submission.

On March 16, 2022, the family court issued its signed ruling for the trial. As a preliminary matter, the court observed, "The parties stipulate to parentage, which was not a contested issue at trial." The court also found that, although the then-expired April 6, 2018 restraining order against father had triggered "the Section 3044 presumption against awarding joint legal or physical custody," the presumption had been rebutted because father had "demonstrated that it is in the best interests of [A.P.] that the parents share joint legal custody and [that A.P.] spend a significant amount of parenting time with Father as well as with Mother . . . ." In connection with this ruling, the court found the "factors set forth in [section] 3044, subd. (b)(2), on balance, support the legislative findings set forth in [section] 3020."

"Specifically:

5

"a. [Father] was not previously ordered to complete an approved batterer's treatment program; the court earlier specifically declined to adopt [a] . . . recommendation that he do so.

"b. The court finds that alcohol or drug counseling is not appropriate. There was no allegation of alcohol or drugs being a factor.

"c. The court finds that a parenting class is appropriate and that [father] has successfully completed a parenting class.

"d. [Father] is not on probation or parole.

"e. A protective order is no longer in place to restrain [father].

"f. [Father] has not committed further acts of domestic violence.

"g. [Father] has completed substantially more individual counseling than was previously ordered.

"h. There was no evidence presented at trial that [father] is in possession of any firearm or ammunition."

Next, the family court awarded mother and father joint legal custody of A.P., "awarded [father] parenting time according to the . . . schedule" included in the March 16, 2022 ruling, declared that "[t]he child shall be in the physical care of the Mother at all times not designated as the Father's parenting time," and issued other orders concerning the parties' parental rights (e.g., the family court imposed certain restrictions on their co-parenting communications).

6

On April 26, 2022, mother timely appealed the family court's March 16, 2022 ruling.[6]

## APPLICABLE LAW

### A.    *The Section 3044 Presumption and Section 6320's Definition of Domestic Violence*

Section 3044, subdivision (a) provides in relevant part: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020.[7]  This

---

[6]  The March 16, 2022 ruling includes a provision requiring father's counsel to "prepare a Judgment and circulate it for review and signature."  Nevertheless, another provision states, "This custody order after trial is a final order[ that] may be changed only on showing of substantial change in circumstances."  Furthermore, we, sua sponte, take judicial notice of the family court's docket as of October 2, 2023, which indicates that the court did not subsequently enter judgment.  (Evid. Code, §§ 452, subd. (d), 459.)  Under these circumstances, we conclude that the March 16, 2022 ruling constitutes a final appealable order.  (See *Sarah B. v. Floyd B.* (2008) 159 Cal.App.4th 938, 940, fn. 2 [noting that " 'the substance or effect of the judgment and not its designation is determinative of its finality[,]' " and that a " 'memorandum of decision may be treated as an appealable order or judgment when it is signed and filed, and when it constitutes the trial judge's determination on the merits' "].)

[7]  Section 3011 sets forth factors a court must consider when "determin[ing] . . . the best interests of the child" (see

7

presumption may only be rebutted by a preponderance of the evidence." (§ 3044, subd. (a).)

"To overcome the presumption set forth in subdivision (a), the court shall find that paragraph (1) [of subdivision (b) of section 3044] is satisfied and shall find that the factors in paragraph (2), on balance, support the legislative findings in Section 3020." (§ 3044, subd. (b).) Subdivision (b)(1) in turn requires "[t]he perpetrator of domestic violence [to have] demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child pursuant to Sections 3011 and 3020. In determining the best interest of the child, the preference for frequent and continuing contact with both parents . . . may not be used to rebut the presumption, in whole or in part." (See § 3044, subd. (b)(1).) "The legal presumption [created by section 3044] is not . . . 'that a parent who has committed an act of domestic violence *should not be awarded* sole or joint legal or physical custody of a child.' [A parent's] burden [is] only *to persuade* the court his [or her] custody would *not be detrimental* to [the child's] best interest. [Citations.] The determination of custody is not to reward or punish the parents for their past conduct, but to determine what is currently in the best interests of the child." (See *S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 334 (*S.Y.*).)

---

§ 3011, subd. (a)), and section 3020 also provides, inter alia, "[t]he Legislature finds and declares that it is the public policy of this state to ensure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children" (see § 3020, subd. (a)).

Subdivision (b)(2) of section 3044 identifies seven factors a court must consider in determining whether the perpetrator of domestic violence has rebutted the presumption, including whether "[t]he perpetrator is restrained by a protective order or restraining order, and has or has not complied with its terms and conditions," and whether "[t]he perpetrator of domestic violence has committed further acts of domestic violence."  (See § 3044, subds. (b)(2)(E) & (b)(2)(F).)

As relevant here, "a person has 'perpetrated domestic violence' when the person is found by the court to have intentionally or recklessly caused or attempted to cause bodily injury, . . . or to have engaged in behavior involving, but not limited to, threatening, striking, harassing, . . . or disturbing the peace of another, for which a court may issue an ex parte order pursuant to Section 6320 to protect the other party seeking custody of the child . . . ."  (See § 3044, subd. (c).)

Section 6320, subdivision (a) in turn provides in relevant part:  "The court may issue an ex parte order enjoining a party from . . . attacking, striking, . . . threatening, . . . battering, . . . harassing, . . . or disturbing the peace of the other party . . . ."  (See § 6320, subd. (a).)  "As used in subdivision (a), 'disturbing the peace of the other party' refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party.  This conduct may be committed directly or indirectly, including through the use of a third party, and by any method or through any means . . . .  This conduct includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty."  (§ 6320, subd. (c).)

9

Courts have recognized that under section 6320, " ' "the requisite abuse need not be actual infliction of physical injury or assault." ' [Citation.]" (See *Curcio v. Pels* (2020) 47 Cal.App.5th 1, 11 (*Curcio*).) Although courts are not required to "apply an objective, reasonable person standard when deciding whether a person has 'disturb[ed] the peace of the other party' " (see *Parris J. v. Christopher U.* (Oct. 4, 2023, B313470, B316247, B317613) --- Cal.App.5th ---, --- [2023 WL 6458520, at p. *7]), conduct that merely "upsets" a party is not sufficient under section 6320 (see *Curcio*, at pp. 12, 14).

### B.     *Standards of Review*

"[Family] courts have great discretion in fashioning child custody and visitation orders.  We therefore review those orders for an abuse of discretion.  [Citation.]  'A court abuses its discretion in making a child custody order if there is no reasonable basis on which it could conclude that its decision advanced the best interests of the child.  [Citation.]  A court also abuses its discretion if it applies improper criteria or makes incorrect legal assumptions.  [Citation.]' [Citation.]  'An abuse of discretion occurs when the [family] court exceeds the bounds of reason; even if we disagree with the [family] court's determination, we uphold the determination so long as it is reasonable.  [Citation.] . . . ' [Citation.]" (See *S.Y.*, *supra*, 29 Cal.App.5th at pp. 333–334, italics omitted.)

"The [family] court's factual findings are reviewed for substantial evidence . . . ." (See *S.Y.*, *supra*, 29 Cal.App.5th at p. 334.)  "Under this deferential standard of review, findings of fact are liberally construed to support the [order] and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings."

(See *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)  An aspect of the substantial evidence standard is " 'the doctrine of implied findings[,]' " which provides that " 'the reviewing court must infer . . . that the [family] court impliedly made every factual finding necessary to support its decision.'  [Citation.]" (See *ibid.*)

"The judgment or order of the lower court is presumed correct on appellate review." (*S.Y.*, *supra*, 29 Cal.App.5th at p. 333.)  "Thus, ' " 'it is the appellant's responsibility to affirmatively demonstrate error' " ' by ' " 'supply[ing] the reviewing court with some cogent argument supported by legal analysis and citation to the record.' "  [Citation.]'  [Citations.] The appellant bears this burden of rebutting the presumption of correctness accorded to the [family] court's decision, regardless of the applicable standard of review." (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 777–778.)

Additionally, "[t]he rules of appellate procedure apply to [mother] even though [she] is representing [herself] on appeal." (See *Scholes v. Lambirth Trucking Co.* (2017) 10 Cal.App.5th 590, 595.)  Although "[a] party may choose to act as his or her own attorney[, w]e treat such a party like any other party," meaning "he or she ' "is entitled to the same, but no greater consideration than other litigants and attorneys.  [Citation.]" ' [Citation.]" (See *ibid.*)

## DISCUSSION

### A. The Family Court's Decision Was Not Predicated on an Error of Law

Mother argues the family "court's determination that [father] rebutted the [section] 3044 presumption by crediting evidence [father] had not engaged in any further acts of 'physical' abuse is an error of law that mandates reversal of its decision, because engaging in litigation abuse is continuing to engage in acts of domestic violence." Mother contends the family "court's decision [was] influenced by an erroneous understanding of applicable law," to wit, the court did not recognize that " 'domestic violence' . . . is not merely physical, but also encompasses mental and psychological abuse, to further include litigation abuse." In support of her position, mother argues that "[a]cts that disturb the peace of a party have been held to include those that destroy the party's mental or emotional calm," and that "[d]estroying the peace of a party through successive, frivolous, and baseless *ex parte* and other filings . . . is just a different form of domestic violence." According to mother, because the family court failed to recognize that domestic violence is not limited to physical abuse, the court's order "is not an exercise of informed discretion and is subject to reversal."

"Normally, we . . . presume the [family] court was aware of and understood the scope of its authority and discretion under the applicable law." (See *Barriga v. 99 Cents Only Stores LLC* (2020) 51 Cal.App.5th 299, 333–334.) " 'If the record *affirmatively shows*' " that the family court's " 'decision [was] influenced by an erroneous understanding of applicable law[,]' " however, "the presumption has been rebutted," and the order " 'is subject to reversal even though there may be substantial

12

evidence to support that order.  [Citations.] . . . ' [Citation.]"  (See *id*. at p. 334, italics added.)

Mother has not affirmatively demonstrated that the family court's decision was influenced by an erroneous understanding of the applicable law.  At no point in its order did the court opine that only physical violence can constitute "further acts of domestic violence" for the purpose of the section 3044 presumption.  (§ 3044, subd. (b)(2)(F).)

Instead, the family court acknowledged mother's "position . . . that [father's] litigation conduct, specifically his repeated ex parte requests to travel with the minor child to meet his extended family, amounts to additional domestic violence in the form of 'coercive control' and 'litigation abuse,' and that his [electronic] communications [with mother on talkingparents.com] reflect 'gaslighting' and 'manipulation.' "

Regarding the latter contention, the court observed, "One example of such 'gaslighting' and 'manipulation,' according to [mother's] trial testimony, was that on one occasion [father] put 'IMPORTANT' in the subject line for a message which [mother] did not feel warranted it."[8]

The family court also criticized mother for alleging that father's ex parte requests constituted " 'litigation abuse' " by "not[ing] that [mother] herself filed two ex parte requests to modify custody and visitation which were denied."  Further, the court observed that mother's "justification for refusing to permit the child to travel to visit [A.P.'s] paternal relatives was that 'given [Mother's] history of being held against her will,' the

---

[8] On appeal, mother does not reassert her claim that father's communications with mother on talkingparents.com constitute acts of domestic violence under section 3044.

concept of the travel was triggering for her."  The court remarked that "this is not a child-focused reason to object to proposed travel," and that "it is in the best interest of the minor child to form connections and relationships with family both on her maternal and on her paternal side and to gain exposure to her cultural and linguistic heritage via contact with both extended families."  The court thereafter found that father had "not committed further acts of domestic violence" for the purpose of section 3044, subdivision (b).

The March 16, 2022 ruling thus reveals that the family court considered and rejected mother's claim that father's ex parte requests to travel with the child amounted to " 'litigation abuse . . . .' "  Accordingly, the court's decision that father had successfully rebutted the section 3044 presumption was not predicated on an erroneous legal assumption that only physical abuse constitutes domestic violence.

## B.    Mother Fails to Demonstrate the Family Court Erred In Finding That Father Had Not Committed Further Acts of Domestic Violence

Mother mounts an evidentiary challenge to the family court's finding that father's ex parte filings did not constitute further acts of domestic violence under section 3044.  Mother asserts that "[a]s a result of [father's] outrageously excessive *ex parte* applications, [mother] lost work, income, and experienced severe distress."  She argues this evidence establishes that father's "baseless *ex parte*" filings "destroy[ed her] mental or emotional calm" and thereby "disturb[ed her] peace" for the purpose of sections 3044 and 6320.

To support her position that these filings disturbed her peace, mother cites an excerpt from the reporter's transcript for a

14

September 29, 2021 hearing wherein mother stated: "This has been frightening—I've lost work. I have not slept. This is—this has been litigation abuse. I lost so much money and lost so much time. We have always been open to [A.P.] seeing her grandparents. I have pictures. She's with him every—almost every weekend. He has—we would be glad to do audio or video. This is—I lost so much money and work."**9**

Mother thus asks us to credit this testimony from the September 29, 2021 hearing.**10** This request ignores the applicable substantial evidence standard of review, which bars us from reevaluating witness credibility. (See Applicable Law, part B, *ante* [noting that the family court's factual findings are reviewed for substantial evidence]; *Curcio, supra*, 47 Cal.App.5th at p. 12 ["We do not determine credibility or reweigh the evidence [under the substantial evidence standard]."].) Indeed, " ' " '[t]he trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony.' " [Citation.]' [Citation.]" (*S.Y., supra*, 29 Cal.App.5th at p. 334.)

Furthermore, even if we credited mother's testimony at the hearing, it does not necessarily follow that the family court erred

---

**9** In connection with this assertion, mother also cites certain documents she submitted to the family court to support a request for an award of attorney fees and costs. These documents do not reference or discuss father's ex parte filings.

**10** We, sua sponte, take judicial notice of a minute order from the September 29, 2021 hearing, which provides that "[t]he parties [we]re placed under oath and testif[ied]." (Evid. Code, §§ 452, subd. (d), 459.)

15

in finding that father's ex parte filings did not "destroy[  mother's] mental or emotional calm . . . . " (See § 6320, subd. (c) [defining " 'disturbing the peace of the other party' "].) For mother to succeed on her evidentiary challenge, she would need to establish—as a matter of law—that father's conduct rose to "the level of destruction of [her] mental and emotional calm[ ] sufficient to support the issuance of a domestic violence restraining order."  (See *Curcio, supra*, 47 Cal.App.5th at p. 13; see also *Wickham v. Southland Corp.* (1985) 168 Cal.App.3d 49, 54 ["A contention that the evidence establishes a particular fact as a matter of law when the fact finder has determined the fact to the contrary is but another way of asserting that the evidence is insufficient to support the determination of the fact finder."].) Mother's testimony falls short of satisfying this standard, given that she vaguely claimed that father's ex parte filings "frighten[ed]" her and caused her to lose an unspecified amount of sleep, work, time, and money.

Mother raises several other arguments to support her challenge to the family court's finding, none of which is persuasive.

Mother contends that at the September 29, 2021 hearing, the family court found father's ex parte filings were " 'inappropriate, expensive, inconvenient, [and] unwarranted . . . .' "  Yet, in making these remarks, the court explained it was "not making any findings . . . at th[at] time" regarding mother's "argument . . . that . . . these requests [we]re being filed as a way of harassing" her.  Reviewing the record in the light most favorable to the court's determinations, we conclude the family court's comments at the September 29, 2021

16

hearing are consistent with its subsequent finding that father did not commit further acts of domestic violence against mother.

Additionally, mother asserts father "stated[ ] during the custody hearing on January 28th, 2022, that he knew all the *ex parte* applications he filed would be denied, but filed them anyway." The record excerpts she cites, however, do not support this claim. One of her citations actually corresponds to the transcript of a hearing held on *December 20, 2019*; in the portion of the transcript mother cites, there is no discussion of father's ex parte filings. Mother's other citations refer to colloquies between the family court and *mother's counsel* at the January 28, 2022 hearing. Significantly, we cannot determine independently whether father's ex parte filings were frivolous because they are not in our record. (Fn. 5, *ante*.)

In sum, we conclude mother has failed to discharge her burden of affirmatively demonstrating that the family court erred in finding that father had not committed further acts of domestic violence.

## C.    We Reject Mother's Challenges to the Parenting Time Provisions

The family court set forth a "parenting time" schedule in the March 16, 2022 ruling. In particular, the court ordered that, "[b]eginning March 18, 2022 and continuing until the Minor Child starts kindergarten, Father's parenting time shall be on the first, third and fifth weekends of the month from Fridays at 3:00 PM to Sundays at 3:00 PM," and that "Father shall have parenting time every Wednesday afternoon from 3:00 pm to 6:00 pm" "beginning March 23, 2022 . . ." The court further ordered, "Once the child starts kindergarten in the fall of 2022, Father's parenting time shall be on the first, third and any fifth

17

weekends of the month from Fridays pick-up after school (or at 3:00 PM if there is no school) to Monday mornings return to school (or at 9:00 AM if there is no school)."  The order provides that after A.P. begins kindergarten in the fall of 2022, father's "Wednesday afternoon visit[s] shall take place within five miles of the minor child's school."  The court required that "any parenting exchanges on vacation days or days the minor child's school is not in session [occur] at the Van Nuys police station" from "March 18, 2022 . . . until the Minor Child starts kindergarten in the fall of 2022 . . . ."

Additionally, the court granted each parent certain vacation time each year, required the parties to "meet and confer regarding vacation scheduling via talkingparents.com," and provided that "if their proposed vacation dates conflict and they are not able to work out that conflict by mutual agreement," then "Father's preferred schedule shall take precedence in even-numbered years and Mother's preferred schedule shall take precedence in odd-numbered years."

Mother's challenges to this scheduling order appear to focus on father's Wednesday parenting time.  First, she claims that "[t]he transitioning of a high conflict custody exchange from the Van Nuys[ ] police station to a school yard at 6 pm mid-week, after-hours, when there is no security, squarely places [mother] in danger."[11]

Second, mother contends that requiring her to pick up A.P. from the child's school at 6 p.m. on Wednesdays would cause her

---

[11] We assume arguendo that mother has correctly interpreted the March 16, 2022 ruling as requiring that Wednesday custody exchanges occur at A.P.'s school, even though the order does not explicitly state as such.

18

"financial hardship." Specifically, she claims compliance with the order would compel her to "work fewer hours" on Wednesdays because, according to mother, she "testif[ied that she] work[s] from 9am to 5pm" and there is an "acknowledged two-hour distance" between her place of employment and the school. She further claims that the Wednesday parenting time schedule could "adversely affect" mother's and A.P.'s "housing and food security" because mother "is the sole financial provider for the minor child as [father] is on General Relief, and has chosen to be unemployed, despite the capacity to work for several years and has been previously exempt from paying child support due to being on Public Welfare-General Relief."

Concerning mother's complaints of lack of security during custody exchanges, we observe that the April 6, 2018 domestic violence restraining order against father had expired more than two years before the family court set this parenting schedule, and that the family court found father had not committed further acts of domestic violence against mother. (See Factual & Procedural Background, *ante*.) Accordingly, the court's decision to change the pickup location from the Van Nuys police station to A.P.'s school did not "exceed[ ] the bounds of reason . . . ." (See *S.Y.*, *supra*, 29 Cal.App.5th at p. 333 [describing the abuse of discretion standard].)

Furthermore, mother fails to support properly her allegation that the Wednesday parenting time schedule would cause her to suffer financial hardship. Mother cites a declaration from her counsel to substantiate mother's claims that she works from 9 a.m. to 5 p.m. and that A.P.'s school is two hours away from her work location. Counsel's declaration does not address either of those issues. Further, mother cites a transcript from a

19

May 17, 2022 hearing in a child support matter for A.P. that is pending in a different county to support her assertions that she is the "sole financial provider" for A.P. and that father has shirked his financial obligations.[12]  Because that hearing occurred after the family court issued its March 16, 2022 ruling, it has no bearing on this appeal.  (See *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 498 ["When reviewing the correctness of a trial court's judgment, we only consider matters that were part of the record at the time the court entered judgment . . . ."].)

Lastly, mother appears to contest provisions of the March 16, 2022 ruling concerning travel and vacation time.  She argues, "[W]hen returning from travel/vacation with the minor child, [father] is able to schedule at any time of his choice, whether late at night or during the day[,] when [mother] will retrieve the child upon the custody exchange with [father]."  Mother cites subdivision (b) of section 3031 to support this argument.

Section 3031, subdivision (b) provides in pertinent part: "Whenever custody or visitation is granted to a parent in a case in which domestic violence is alleged *and an emergency protective order, protective order, or other restraining order has been issued*, the custody or visitation order shall specify the time, day, place, and manner of transfer of the child for custody or visitation to limit the child's exposure to potential domestic conflict or violence

_____

[12]  The family court had observed in its March 16, 2022 ruling that "[c]hild support is being handled in a separate case in Ventura County, and both parties stipulated it was not at issue at the trial."  Mother does not contest that portion of the March 16, 2022 ruling.

20

and to ensure the safety of all family members." (Italics added.) Mother provides no analysis explaining how the family court's order violates this provision. This failure is particularly troublesome because at the time the family court issued its travel and vacation time schedule, no emergency protective order, protective order, or other restraining order was extant. By failing adequately to support her challenge to the family court's order regarding travel and vacation time, mother has waived her claim of error. (See *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 ["[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in [her] case."]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument . . . allows this court to treat the contention as waived.' "].)

**D. We Decline To Address Factual Assertions That Mother Fails To Discuss in the Legal Argument Section of Her Brief and the Vague Assertions of Error That She Fails Cogently To Analyze in That Section**

Although mother states on appeal that father engaged in misconduct, she does not clarify whether these assertions give rise to error not already addressed in our Discussion.

As illustrative only, mother argues father's supposed " 'litigation abuse' . . . must be considered continuing acts of domestic violence that falls within the scope of abuse that may be enjoined under . . . [ ]§ 6320 *and the civil harassment statute* (Code Civ. Proc., § 527.6, subd. (b))." (Italics added.) Mother does not clarify, however, whether she is raising an appellate

21

claim predicated on Code of Civil Procedure section 527.6 or otherwise explain the relevance of that statute to the instant case.  (See Applicable Law, part A, *ante* [indicating that § 3044, subd. (c) references § 6320, and not Code Civ. Proc., § 527.6, in defining domestic violence relevant to the § 3044 presumption].)

Another example is a heading in which mother states:  "The trial court abused its discretion in refusing to consider [father's] litigation abuse *that was compounded by false claims of indigency* as continued acts of domestic violence that require application of the 3044 presumption."  (Underscoring, boldface, & some capitalization omitted; italics added.)  Yet, in that section of mother's brief, she does not discuss father's alleged "false claims of indigency" at all, let alone explain whether they disturbed mother's peace for the purpose of section 6320 or otherwise have some relevance to this appeal.  (See also fn. 12, *ante* [noting that child support was being handled by a court in a different county and that it was not at issue in the trial for this case].)

Furthermore, the statement of the case and the factual history sections of mother's appellate brief contain complaints that are not analyzed cogently as claims of error in the argument section of her brief.  For instance, mother asserts in the factual history section that at "[n]umerous [unspecified] times[, father] abusively screamed at [mother] and forced the visitation exchanges to last an inordinately long time, even reaching the point where intervention by the police was required."  Mother also complains in her statement of the case that father made "fraudulent claims of being indigent," an assertion that, as we explained above, mother does not develop in the argument section of her brief.

22

We do not "develop [mother's] arguments' " for her (see *Cahill*, *supra*, 194 Cal.App.4th at p. 956), nor do we guess how these complaints are related to any legal challenge to the March 16, 2022 ruling (see *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 725–726 [holding that an appellant forfeited a contention by failing to "present [it] in the argument section of either the opening or reply brief"].)  We thus do not address further any other complaints not tethered to legal argument in her appellate briefing.

## DISPOSITION

We affirm the family court's March 16, 2022 order.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.